NO SUMMONS ISSUED

CV 12 - 2233

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------

BURACH FEUERWERKER on behalf of himself and
all other similarly situated consumers

Plaintiff,

-against-

MIDLAND FUNDING, LLC and MIDLAND
CREDIT MANAGEMENT, INC.

Defendants.

-------------------------------------------------------------------------

FILED
U.S. CLERK'S OFFICE
DISTRICT COURT E.D.N.Y
★ MAY 04 2012 ★

WEINSTEIN, J. BROOKLYN OFFICE

POLLAK, M.J

## CLASS ACTION COMPLAINT

### *Introduction*

1.    This is a consumer class action brought pursuant to the Fair Debt Collection Practices
      Act, 15 U.S.C. § 1692 et seq. (hereinafter "FDCPA"), which prohibits debt collectors from
      engaging in abusive, deceptive and unfair practices, New York General Business Law §
      349, which prohibits deceptive acts or practices in the conduct of any business, trade or
      commerce or in the furnishing of any service, and New York General Obligations Law
      §5-501 et seq., which prohibits the charging of usurious interest rates, i.e. interest in excess
      of 16%.

2.    Plaintiff Burach Feuerwerker, on behalf of himself and all persons similarly situated,
      seeks injunctive relief, declaratory judgment, actual, statutory and punitive damages
      against Defendant Midland Funding, LLC and Midland Credit Management, Inc. arising
      from their routine practice of charging, collecting and seeking to collect interest in excess of
      16%.

-1-

### *Jurisdiction*

3.   Subject matter jurisdiction of this Court arises under 28 U.S.C. §§ 1331, 1337, and 15 U.S.C. §1692k(d), and supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. § 1367.  Declaratory relief is available pursuant to 28 U.S.C. §§ 2201 and 2202.

### *Venue*

4.   Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(b), in that a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.  Venue is also proper in this judicial district pursuant to 15 U.S.C. § 1692k(d), in that the Defendants transact business in this judicial district and the violations of the FDCPA and New York statutory law occurred in this judicial district.

### *Parties*

5.   Plaintiff Burach Feuerwerker is an adult individual residing in Brooklyn, New York and is a "consumer" as defined in 15 U.S.C. § 1692a(3).

6.   Defendant Midland Funding, LLC (hereinafter "Midland Funding") is a purchaser of debts in default with its primary place of business located in San Diego, California. Midland Funding, LLC is a "debt collector" as defined in 15 U.S.C. § 1692a(6).

7.   Midland Funding, LLC is a debt buying entity that is a wholly owned subsidiary of Encore Capital Group, Inc. ("Encore") – a publicly traded company that is among the largest buyers and collectors of defaulted credit card receivables in the United States.

8.   Defendant Midland Credit Management, Inc. (hereinafter "MCM") is a collection agency with its primary place of business located in San Diego, California.  MCM is a "debt collector" as defined in 15 U.S.C. § 1692a(6).

9.    Midland Credit Management, Inc. is, likewise, a wholly owned subsidiary of Encore, and

acts as a servicer of all or the vast majority of Encore's consumer debt portfolio. See

Encore website, stating "...IF you are one of our consumers, you probably know us as

Midland Credit Management, Inc. (or MCM)."

http://www.encorecapital.com/consumers.

### Factual Allegations

10.    Plaintiff Burach Feuerwerker incurred an obligation with CitiBank for personal, family,

or household purposes.

11.    Defendant Midland Funding, LLC acquired Burach Feuerwerker's alleged obligation

after it had gone into default.

12.    Defendant Midland Funding, LLC placed Burach Feuerwerker's alleged obligation with

Midland Credit Management, Inc. for collection.

13.    On or about July 30, 2009, Defendant Midland Credit Management, Inc. on behalf of

Midland Funding, LLC sent or caused to be sent a letter to Plaintiff Burach Feuerwerker

to collect on a debt allegedly originally due to CitiBank, now allegedly due to Midland

Funding, LLC.

14.    The letter purports to show the "current balance" as $38,788.72.

15.    When Midland Funding LLC originally bought the debt from CitiBank, the balance was

$37,052.

16.    On February 23, 2012, the Defendant sent Plaintiff an additional letter which showed the

"current balance as $66,363.30".

-3-

17. On March 26, 2012, Midland Funding confirmed that they are in fact charging 28% interest per year.

18. On March 26, 2012, the illegal balance Midland Funding LLC claimed that was owed was the amount of $67,393.

19. New York General Obligation Law § 5-501 states that the "rate of interest... upon the loan or forbearance of any money, goods, or things in action... shall be six per centum per annum unless a different rate is prescribed in section fourteen-a of the banking law".

20. Section § 14-a(1) of New York's Banking Law, in turn, provides that "[t]he maximum rate of interest provided for in section 5-501 of the general obligations law shall be sixteen per centum per annum."

21. New York General Obligations Law §5-511 provides that, subject to exceptions not applicable in the instant case (e.g. certain shipping-related loans, and loans made by a "savings bank, a savings and loan association or a federal savings and loan association") contracts which provide for payments greater than that authorized by New York General Obligations Law §5-501 are void.

22. Although the original creditor, CitiBank, is exempt from New York's usury laws pursuant to the National Banking Act, 12 U.S.C. §85, the Defendants are not national banks, and are not exempt.

23. Moreover, a non-national bank assignee does not get the benefit of the federal exemption under New York law. See, e.g. New York General Obligations Law, § 13-105.

24. On or about March 26, 2012, Plaintiff Burach Feuerwerker tried to dispute the debt over the phone.

-4-

25. Defendant informed the Plaintiff that he must have a reason to dispute the debt and that it was too late to dispute it.

26. Defendant also stated to Plaintiff that the dispute needed to be done in writing.

27. The FDCPA does not require the consumer to provide any reason at all in order to dispute a debt. Sambor v. Omnia Credit Servs., 183 F. Supp. 2d 1234 (D. Haw. 2002); Mendez v. M.R.S. Assoc., 2004 WL 1745779 *2 (N.D. Ill. Aug. 3, 2004) (a consumer is entitled to dispute the validity of a debt for a good reason, a bad reason, or no reason at all); Whitten v. ARS National Servs. Inc., 2002 WL 1050320 *4 (N.D. Ill. May 23, 2002) (imposing a requirement that a consumer have a 'valid' reason to dispute the debt is inconsistent with FDCPA); Castro v. ARS National Servs., Inc., 2000 WL 264310 (S.D.N.Y. Mar. 8, 2000); Frey v. Satter, Beyer & Spires., 1999 WL 301650 (N.D. Ill. May 3, 1999); DeSantis v. Computer Credit, Inc., 269 f.3d 159 (2nd Cir. 2001); Mejia v. Marauder Corporation., 2007 WL 806486 (N.D. Cal. 2007) (unlawful to suggest that proof of payment required for dispute).

The FDCPA allows the consumer to orally dispute a debt. Brady v. The Credit Recovery Company, Inc., 160 F.3d 64 (1st Cir. 1998). The FDCPA does not limit the time period for disputing a debt. A consumer can always dispute a debt with a debt collector, regardless of the passage of time. Credit reporting constitutes an attempt to collect a debt. See, e.g., Rivera v. Bank One., 145 F.R.D. 614, 623 (D.P.R. 1993) (a creditor's report of a debt to a consumer reporting agency is a "powerful tool, designed, in part, to wrench compliance with payment terms from its cardholder"); Matter of Sommersdorf.,

139 B.R. 700, 701 (Bankr.S.D. Ohio 1991); Ditty v. CheckRite, Ltd., 973 F.Supp. 1320, 1331 (D.Utah 1997).

A consumer is entitled to dispute a debt orally and need not seek validation to overcome the debt collector's assumption of validity. See. Rosado v. Taylor., 324 F. Supp. 2d 917 (N.D. Ind. 2004). (The collection attorney violated § 1692g(a)(3) by requiring that disputes be in writing to prevent the collector from considering the debt valid. The court noted that oral disputes overcome the assumption of validity and impose a requirement under § 1692e(8) that the debt collector report the dispute if reporting the debt to third parties).

It is well settled that § 1692g(a)(3) does not impose a writing requirement on a consumer. See. Register v. Reiner, Reiner & Bendett, P.C., 488 F.Supp.2d 143 (D.Conn. 2007); Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich, 464 F.Supp.2d 720 (N.D. Ohio 2006); Baez v. Wagner & Hunt, P.A., 442 F.Supp.2d 1273 (S.D.Fla. 2006); Turner v. Shenandoah Legal Group, P.C., No. 3:06CV045, 2006 WL 1685698 (E.D. Va. 2006); Vega v. Credit Bureau Enters., No. CIVA02CV1550, 2005 WL 711657 (E.D.N.Y. Mar. 29, 2005); Nasca v. GC Servs. Ltd. P'ship, No 01CIV10127, 2002 WL 31040647 (S.D.N.Y. Sept. 12, 2002); In re Risk Mgmt. Alternatives, Inc., Fair Debt Collection Practices Act Litig., 208 F.R.D. 493 (S.D.N.Y. June 14, 2002); Sambor v. Omnia Credit Servs., Inc., 183 F.Supp.2d 1234 (D.Haw. 2002); Sanchez v. Robert E. Weiss, Inc., 173 F.Supp.2d 1029 (N.D. Cal. 2001); Castro v. ARS Nat'l Servs., Inc., No. 99 CIV. 4596, 2000 WL 264310 (S.D.N.Y. Mar. 8, 2000); Ong v. Am. Collections Enter., No. 98-CV-5117, 1999 WL 51816 (E.D.N.Y. Jan. 15, 1999); Reed v. Smith, Smith & Smith, No.

-6-

Civ. A. 93-956, 1995 WL 907764 (M.D.La. Feb. 8, 1995); Harvey v. United

Adjusters, 509 F.Supp.1218 (D.Or. 1981).

28.   Upon information and belief, the Defendant and its employee intentionally denied Burach

Feuerwerker his dispute rights given to him under the FDCPA.

29.   Upon information and belief, the Defendant and its employee wrongfully stated to

Burach Feuerwerker that he could not orally dispute the debt directly with the Defendant.

30.   Upon information and belief, the Defendant and its employee wrongfully stated to

Burach Feuerwerker that he could only dispute a debt in writing.

31.   Upon information and belief, the Defendant and its employee wrongfully stated to

Burach Feuerwerker that he must have a reason to dispute a debt.

32.   Upon information and belief, the Defendant and its employee by intentionally denying

Burach Feuerwerker and any other debtor to dispute the debt orally and without a valid

reason unfairly intimidate and force debtors in to paying disputed debts.

33.   The employee who spoke with Burach Feuerwerker intended to speak the said words to

the Plaintiff.

34.   The acts and omissions of the Defendant and its employee done in connection with

efforts to collect a debt from Burach Feuerwerker were done intentionally and willfully.

35.   Upon information and belief, Defendant and its employees intentionally and willfully

violated the FDCPA and do so as a matter of pattern and practice by not letting any of the

class members orally dispute the debt and by maintaining that the debtors have a valid

reason to dispute any debt contrary to the FDCPA and the rights given by the Defendant

purportedly in the validation notice.

-7-

36.   As an actual and proximate result of the acts and omissions of the Defendant and its

employees, Plaintiff has suffered actual damages and injury, including but not limited to,

fear, stress, mental anguish, emotional stress, acute embarrassment and suffering for

which he should be compensated in an amount to be established by a jury at trial.

37.   On or about March 23, 2012, a representative of Midland Credit called and left a message

with a third party.

38.   The representative from Creditors Interchange spoke to the third party stating: "My name

is Larry, my number 1 800 265 8825 ext 35481. Tell him that Larry called, and that I'm

calling from Midland Credit".

39.   While a majority of the courts have ruled that under the FDCPA, a debt collector may not

have a right to leave a message on a voicemail system and in fact, risks violating either

§§ 1692d(6), 1692e(11) or 1692c(b) if it does so. See e.g. Carman v. CBE Group, Inc.,

2011 U.S. Dist. LEXIS 29730 (D. Kan. Mar. 23, 2011). It is well settled that when a debt

collector contacts or reaches a third party and chooses to leave **any** message at all to be

conveyed to the debtor, such a communication being left with a third party will in fact

violate §§ 1692c(b),1692d(6), 1692e(11). See Krapf v. Collectors Training Institute of

Illinois, Inc, Dist. Court, WD New York 2010 (Holding that contact with a third party

that did not involve an inquiry into Plaintiff's location information but rather left a

message for the debtor was a violation of 1692(b), 1692(c)(b), and and 1692(d). West v.

Nationwide Credit, Inc., 998 F. Supp. 642 (W.D.N.C.1998) (Section 1692(c)(b) should be

broadly interpreted to prohibit a debt collector, in connection with the collection of any

debt, from conveying any information relating to a debt to a third party. The consumer's

-8-

complaint alleging that the debt collector telephoned Plaintiff's neighbor leaving

collector's name and telephone number and asking the neighbor to have consumer return

the call, stated a claim for violation of § 1692c(b).) Romano v. Williams & Fudge, Inc.,

644 F. Supp. 2d 653 - Dist. Court, WD Pennsylvania 2008 quoting West v. Nationwide

Credit, Inc., 998 F. Supp. 642 - Dist. Court, WD North Carolina 1998 (a complaint

alleging that debt collector telephoned plaintiff's neighbor leaving collector's name and

telephone number and asking the neighbor to have plaintiff return call stated a claim for

violation of Section 1692(c)(b). Thomas v. Consumer Adjustment Co., Inc., 579 F. Supp.

2d 1290 - Dist. Court, ED Missouri 2008 quoting West v. Nationwide Credit, Inc., 998 F.

Supp. 642 - Dist. Court, WD North Carolina 1998 (holding that § 1692(c)(b) does not

prohibit only those third-party communications in which some information about the debt

is actually disclosed because that reading would render § 1692(b) superfluous.) Blair v.

Sherman Acquisition, Dist. Court, ND Illinois 2004 quoting West v. Nationwide Credit,

Inc., 998 F. Supp. 642 - Dist. Court, WD North Carolina 1998 (All provisions of the

statute must be considered and each term must be interpreted equally, so as not to deflect

from the meaning of the statute.  Specifically, as to 15 U.S.C. § 1692, every clause and

word must be given force and § 1692(c)(b) should be broadly interpreted to prohibit a

debt collector from conveying any information to a third party that concerns a debt

(except for the purpose of obtaining location information as permitted under § 1692(b).

Mathis v. Omnium Worldwide, Dist. Court, D. Oregon 2006 quoting West v.

Nationwide Credit, Inc., 998 F. Supp. 642 - Dist. Court, WD North Carolina 1998

("'Other than to obtain location information, a debt collector may not contact third

persons such as a consumer's friends, neighbors, relatives, or employer. Such contacts are not legitimate collection practices and result in serious invasions of privacy, as well as the loss of jobs.'". West v. Nationwide Credit, Inc., 998 F. Supp. 642, 645 n.2 (W.D.N.C. 1998) (quoting S. Rep. No. 95-382, reprinted at 1977 U.S. Code & Admin. News 1695, 1699) Krapf v. Collectors Training Institute of Illinois, Inc., Dist. Court, WD New York 2010 quoting West v. Nationwide Credit, Inc., 998 F.Supp. 642, 643-45 (W.D.N.C. 1998) (contact with a third party that did not involve an inquiry into Plaintiff's location information, but rather, revealed that Plaintiff had a "business matter." stated a claim under § 1692(c)(b) finding that the plaintiff's allegation that the defendant contacted a third party to relay about a "very important" matter regarding the plaintiff. Plaintiff sufficiently stated claims under §§ 1692(b), 1692(c)(b), and 1692(d). And finally, the famous *Foti v. NCO* which gave the name to the now all common FOTI claim already quoted in almost all circuits as a FOTI claim - TO DATE OVER 40 COURTS HAVE ADOPTED FOTIS DEFINITION OF INDIRECT COMMUNICATION. Foti v. NCO Financial Systems, Inc., 424 F. Supp. 2d 643 - Dist. Court, SD New York 2006 - Judge Karas in *Foti* based their reasoning on West v. Nationwide Credit. In Judge Karas' own words in Foti ("In West v. Nationwide Credit, 998 F.Supp. 642, 644 (W.D.N.C.1998), the court rejected a narrow interpretation of the word "communication," similar to that advanced by NCO in this case. The plaintiff in West alleged that defendants violated § 1692(c)(b) by contacting plaintiffs neighbor. Defendants argued that a debt collector's phone call informing a neighbor that he had a "very important" matter to discuss did not violate § 1692(c)(b) because no information

-10-

was actually conveyed about plaintiffs debt. The West court rejected this narrow

interpretation of "communication" in favor of a broader interpretation. *Id.* at 644. In

reaching this conclusion, the West court noted that "[i]n interpreting the meaning of a

statute, it is well settled that `[t]he "plain meaning" of statutory language controls its

construction,'" and went on to examine the dictionary definitions of "regarding." *Id.*

(quoting 657*657 Summit Inv. & Dev. Corp. v. Leroux, 69 F.3d 608, 610 (1st Cir.1995)).

In particular, the court noted: "Webster's Ninth New Collegiate Dictionary (1st ed.1983)

defines the term `regard' as, inter alia, `to relate to,' while it provides the following

definition of the term `regarding': `with respect to: concerning.'" *Id.* "Based on these

definitions, the court believes the ordinary meaning of the term `regarding' is consistent

with the broader interpretation advocated by Plaintiff." *Id.* This conclusion has been

embraced by other courts as well in the context of applying § 1692(c)(b). See, e.g.,

Henderson, 2001 WL 969105, at *2 (rejecting defendant's argument that letter sent to

employer seeking information about whether plaintiff was employed, her wage scale, her

type of employment, the full name of her employer, and if terminated, the name of her

present employer, did not violate § 1692(c)(b) because it did not suggest a debt collection

purpose). Thus, given the choice of language by Congress, the FDCPA should be

interpreted to cover communications that convey, directly or indirectly, any information

relating to a debt, and not just when the debt collector discloses specific information

about the particular debt being collected. Indeed, a narrow reading of the term

"communication" to exclude instances such as the present case where no specific

information about a debt is explicitly conveyed could create a significant loophole in the

-11-

FDCPA, allowing debtors to circumvent the § 1692(e)(11) disclosure requirement, and other provisions of the FDCPA that have a threshold "communication" requirement, merely by not conveying specific information about the debt. In fact, under Defendant's interpretation of "communication," a debt collector could call regularly after the thirty-day validation notice is sent, and not be subject to the § 1692(e)(11) requirement so long as the message did not convey specific information about the debt. Such a reading is inconsistent with 658*658 Congress's intent to protect consumers from "serious and widespread" debt collection abuses.) Krug v. Focus Receivables Mgmt., LLC, 2010 U.S. Dist. LEXIS 45850 (D.N.J. May 11, 2010) (same); Henderson v. Eaton, 2001 U.S. Dist. LEXIS 13243 (E.D. La. Aug.23, 2001) quoting West v. Nationwide Credit, Inc., 998 F. Supp. 642 (W.D.N.C.1998) and holding that under § 1692(c)(b), a debt collector may not communicate with a third party "in connection with the collection of any debt" except to obtain location information as provided in § 1692(b). To violate § 1692(b), the third party communication need only be "in connection with the collection of a debt;" it need not expressly mention the debt or debt collection as "communication" includes conveying information about a debt "indirectly." 15 U.S.C. § 1692a(2).) Henderson v. Eaton, 2002 U.S. Dist. LEXIS 274 (E.D. La. Jan. 2, 2002). (FDCPA class action certified); Leyse v. Corporate Collection Servs., 2006 U.S. Dist. LEXIS 67719 quoting West v. Nationwide Credit, Inc., 998 F. Supp. 642 (W.D.N.C.1998) (Finding that a phone call to a debtor's neighbor that the defendant had a "very important" matter to address was "regarding a debt" because the content of the phone call was "with respect to" the defendant's efforts to collect on plaintiff's alleged

-12-

arrearage. <u>Wideman v. Monterey Fin. Servs.</u>, 2009 U.S. Dist. LEXIS 38824 (Finding

that the messages left by the defendant constituted "communications" even though they

did not technically mention any information about the debt and stated a claim under §

1692(c)(b) since it was not left for the purpose of obtaining location information which is

the only permissible communication with third parties under the FDCPA, quoting West v.

Nationwide Credit, Inc., 998 F. Supp. 642, 644-45 (W.D.N.C. 1998); also quoting Belin

v. Litton Loan Servicing, LP, 2006 U.S. Dist. LEXIS 47953, 2006 WL 1992410 at *4

(M.D. Fla. July 14, 2006) (which found that the message was a communication under the

FDCPA even though it was not disclosed that it came from a debt collector where the

name of the company was referenced, directions to return the call were given, and the

purpose of the message was to induce the debtor to return the call). <u>Shand-Pistilli v.</u>

<u>Professional Account Servs., Inc.</u>, 2010 WL 2978029 (E.D. Pa. July 26, 2010) (The

consumer adequately alleged that defendant contacted a third party in violation of §

1692(c)(b) since the defendant's inquiry went beyond the boundaries of location

information. A debt collector may not seek additional information about a consumer

because such information is beyond the scope of location information.) <u>Gburek v. Litton</u>

<u>Loan Servicing LP</u>, 614 F.3d 380 (7th Cir. 2010). (A "communication" need not refer to

the debt."); <u>Edwards v. Niagra Credit Solutions, Inc.</u>, 586 F. Supp. 2d 1346, 1350-51

(N.D. Ga. 2008) (finding that the telephone message at issue, which referenced an

"important" matter, contained information regarding a file number and whom to contact,

and was left for the purpose of collecting the debt, indirectly conveyed information

concerning the debt and, therefore, met the statutory definition of a "communication");

-13-

Ramirez v. Apex Financial Management, LLC, 567 F. Supp. 2d 1035, 1041 (N.D. Ill. 2008) (finding that the message was an indirect communication regarding the plaintifi's debt where it conveyed pertinent information including the fact that there was a matter he should attend to and instructions on how to do so); Hosseinzadeh v. M.R.S. Associates, Inc., 387 F. Supp. 2d 1104, 1116 (C.D. Cal. 2005) (finding that the messages left by the defendant constituted "communications" even though they did not technically mention specific information about the debt); Belin v. Litton Loan Servicing, LP, 2006 U.S. Dist. LEXIS 47953, 2006 WL 1992410 at *4 (M.D. Fla. July 14, 2006) (finding that the message was a communication under the FDCPA even though it was not disclosed that it came from a debt collector where the name of the company was referenced, directions to return the call were given, and the purpose of the message was to induce the debtor to return the call); Shaver v. Trauner, 97-1309, 1998 U.S.Dist. LEXIS 19648 (C.D.Ill., Jul. 31, 1998) (The only exception in the FDCPA which permits a debt collector to contact third parties is to obtain: "location information about the consumer." 15 U.S.C. § 1692(b). On its face, a communication to someone other than those enumerated in the statute, and which offers or seeks information not limited to "location information." would be unlawful (class and adoption of denial of motion to dismiss), 1998 U.S.Dist. LEXIS 19647 (C.D.Ill., May, 29, 1998) (Magistrate Judge's denial of motion to dismiss). Smith v. NCO Fin. Sys., 2009 U.S. Dist. LEXIS 51576 (E.D. Pa. June 12, 2009) (Holding that the FDCPA prohibits debt collectors from communicating with anyone other than the consumer and the only exception to this broad proscription is that debt collectors may, under Section 1692(b), communicate with persons "other than the

-14-

consumer for the purpose of acquiring location information about the consumer." The

FDCPA defines "location information" as "a consumer's place of abode and his telephone

number at such place, or his place of employment". Contact with third parties, such as

employers, for any other purpose is prohibited under the FDCPA. The court noted that

the Defendants' contention that the FDCPA "does not prohibit all third party contact --

only disclosure of the debt to third parties" is an untenable position, unsupported by

authority and clearly at odds with the plain language of the statute.)

## *DEFENDANT'S PRACTICES AND POLICIES*

40. It is the standard practice and policy of Defendants to charge, collect and attempt to

collect interest in excess of 16%, inter alia, by means of communications such as Exhibit

A, that falsely state that the interest rate for an account is higher than 16%, and that

incorrectly calculate the "current balance" on the basis of the higher, unlawful interest

rate.

41. It is the standard practice and policy of Defendants to falsely represent the character,

amount, or legal status of the debt by stating in its written communications with debtors as

with the said July 30, 2009 and February 23, 2012 letters, that the interest rate for an

account is higher than 16%, and by calculating the "current balance" on the basis of the

higher, unlawful interest rate.

42. It is the standard practice and policy of Defendants to threaten to take action that cannot

legally be taken or that is not intended to be taken, *i.e.* the charging of interest in excess

of 16% per year.

43.    It is the standard practice and policy of Defendants to collect or attempt to collect interest at a rate higher than permitted by law.

44.    It is the standard practice and policy of Defendants that they never intend to follow through with the validation rights they purportedly provide in the initial communication.

45.    It is the standard practice and policy of Defendants that they do not allow debtors to dispute their debts orally.

46.    It is the standard practice and policy of Defendants that when receiving written disputes, they do not provide verification of debts since they maintain that all disputes in writing must be submitted with a valid reason.

47.    It is the standard practice and policy of Defendants to leave messages with third parties.

## CLASS RULE ALLEGATIONS

48.    Pursuant to Rules 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure, this action is brought as a class action.  The umbrella class is defined as:

      (i)    all persons residing in New York who were sent a letter by Defendants attempting to collect interest in excess of 16%; and

      (ii)    regarding debts incurred for personal, family, or household purposes.

49.    The subclass for violations of the FDCPA covers the period of one year prior to the date of filing this action through the date of class certification.

50.    The subclass for violations of N.Y. GBL §349 covers the period of 3 years prior to the date of filing this action through the date of class certification.

51.    The subclass for violations of N.Y. GOL §5-501 et seq. covers the period of one year prior to the date of filing this action through the date of class certification.

52. The members of the class are so numerous that joinder of all parties is impracticable. At this time, the precise number cannot be determined. After preliminary investigation, and upon information and belief, there appear to be thousands of members of the class.

53. Plaintiff notes in this regard that Defendants collect and attempt to collect a staggering volume of debts in New York. For example, a study of New York Civil Court filings for 2007 found that Midland Funding, LLC filed 26,998 cases against consumers in that year alone, and was the second highest volume filer of consumer credit actions that year. MFY Legal Services, Inc., Justice Disserved, June 2008, at p. 4. http://www.mfy.orgwp-content/uploads/reports/Justice_Disserved.pdf.

54. A study of a sample of 600 consumer credit actions initiated in New York City's Civil Courts in 2006 likewise found that Midland and related entities filed 12% of all such actions that year. Urban Justice, Debt Weight: The Consumer Credit Crisis in New York City and its Impact on the Working Poor, October 2007, at p. 14.

55. Encore Capital, the parent corporation of which Midland Funding and MCM are the consumer-facing subsidiaries, boasts on its website that its database includes some "25 million active accounts". http://www.encorecgpital.com/about. Encore reported gross collections of $195.1 million dollars for the second quarter of 2011. http://I)hx.corporate it.net/phoenix.zhtml?c=11.5920&p=irol-newsArticle&ID=1591449&highlight=

56. There are questions of law or fact common to the class, including whether the said collection letters, or otherwise seeking interest at a rate exceeding 16%, violate the FDCPA, N.Y. GBL §349, and N.Y. GOL §5-501 et seq.

57. Plaintiff's claims are typical of the class members in that he alleges the same claims asserted on behalf of the class as a whole.

58. Plaintiff will fairly and adequately protect the interests of the class in that he has a personal desire to vindicate the rights of the class and he has retained competent counsel experienced with the FDCPA as well as other consumer litigation and class actions to represent the class.

59. Prosecution of separate actions by individual class members creates risk of individual adjudications that would, as a practical matter, be dispositive of the interests of the other members that are not parties to the adjudication, or would substantially impair or impede their ability to protect their interests.

60. Prosecution of separate actions by individual members of the class would create risk of varying individual adjudications, which would establish incompatible standards of conduct for defendants who are expected to oppose the class. Questions of law and fact common to the class members predominate over any questions affecting only individual members, and a class action is superior to other methods available for the efficient adjudication of the controversy; the relief sought by all members of the class will be effective and appropriate for the entire class; all members of the class have a right to damages or other relief which may be readily computed in each case or otherwise readily determined.

61. Many of the persons with whom Defendants have dealt, or who were affected by their activities, may not be aware of their rights, or are not in a financial position to assert such rights readily. Because relegation of their claims to individual actions would result in an unreasonable multiplicity of suits and a corresponding burden on this court and other courts,

-18-

a class action is far superior to all other methods for a fair and efficient adjudication of this controversy.

62.   A class action is a superior method for the fair and efficient adjudication of this controversy. Class wide damages are essential to induce defendants to comply with Federal law. The interest of class members in individually controlling the prosecution of separate claims against defendants is small because the maximum statutory damages on an individual are $1000 for violation of the FDCPA. Management of these class claims are likely to present significantly fewer difficulties than those presented in many class claims, e.g., for securities fraud.

63.   Defendants have acted on grounds generally applicable to the class, thereby making appropriate final injunctive relief and corresponding declaratory relief with respect to the class as a whole.

64.   Plaintiff Burach Feuerwerker requests certification of a hybrid class combining the elements of Rule 23(b)(3) for monetary damages and Rule 23(b)(2) for equitable relief.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### FAIR DEBT COLLECTION PRACTICES ACT ("FDCPA")
### 15 USC 1692 et seg.

65.   Plaintiff realleges and incorporates by references all of the allegations contained in the above paragraphs.

66.     Congress enacted the Fair Debt Collection Practices Act to stop "the use of abusive,

        deceptive and unfair debt collection practices by many debt collectors." 15 U.S.C. §

        1692(a).

67.     A debt collector may not "use any false, deceptive, or misleading representation or means

        in connection with the collection of any debt." 15 U.S.C. § 1692(e). Included within this

        prohibition is the false representation of "the character, amount, or legal status of any

        debt." 15 U.S.C. § 1692(e)(2)(A).

68.     The prohibition against false, deceptive, or misleading conduct also bars the "use of any

        false representation or deceptive means to collect or attempt to collect any debt." 15

        U.S.C. § 1692(e)(10).

69.     A debt collector may also not "use unfair or unconscionable means to collect or attempt to

        collect any debt." 15 U.S.C. § 1692(f).

70.     Defendants violated § 1692(e) and § 1692(f) of the FDCPA by charging, collecting and/or

        seeking to collect interest at a usurious rate from Plaintiff and the other class members by

        means of collection letters as with the said July 30, 2009 and February 23, 2012 letters.

        Specifically, and without limitation, the collection letters in question:

        (a)     falsely represent the character, amount, or legal status of the debt, in violation of §

        1692(e)(2)(A);

        (b)     take or threaten to take action that cannot legally be taken or that is not intended

        to be taken (i.e. the charging and collection of usurious amounts) in violation of

        1692(e)(5);

(c)    constitute a false and deceptive method of collecting or attempting to collect a debt in violation of § 1692(e)(l0);

(d)    constitute an attempt to collect interest not expressly authorized by any agreement between consumers and Defendants, or permitted by law, in violation of 1692(f)(I).

71.    Defendants violated § 1692(g)(a)(3) for denying Plaintiff the right to dispute the debt orally and for requiring the Plaintiff to provide a valid reason to dispute.

72.    As a direct and proximate result of Defendants' violations of the FDCPA, Plaintiff has sustained statutory and actual damages, costs and attorneys' fees.

73.    Defendants also violated 15 U.S.C. 1692 §§ 1692(c)(b) and 1692(d) for leaving a message with a third party and directing the consumer to call the Defendant.

### *SECOND CAUSE OF ACTION*

### *NEW YORK GENERAL BUSINES LAW § 349 ("NYGBL § 349")*

74.    Plaintiff repeats and re-alleges and incorporates by reference the foregoing paragraphs.

75.    Defendants' collection, included attempted collection(s), of usurious amounts, including but not limited to its representations to consumers that it is entitled to collect such amounts or that such interest is "accruing" and inclusion of such interest in balance statements, constitutes a deceptive business practice in violation of NYGBL § 349.

76.    These acts were committed in the conduct of business, trade, commerce or the furnishing of a service in this state and constituted a violation of § 349 independent of whether it also constituted a violation of any other law.

-21-

77.    These acts are consumer-oriented, involving deceptive representations made in form /
       standardized correspondence with large numbers of consumers.  The violations alleged
       herein are recurring and have a broad impact upon the public.

78.    Indeed, although Plaintiff cannot say with certitude exactly how many such deceptive
       form letters were sent over the past three years, it is virtually certain to be in the
       thousands.

79.    As reviewed above, Defendant Midland Funding, LLC files tens of thousands of lawsuits
       in New York City's civil courts every year.  It is inconceivable that the said form letters,
       regarding Midlands collection on debt which originated with CitiBank is an isolated
       instance.

80.    Rather, upon information and belief, the overstatements of balance and interest in
       standardized correspondence sent to large numbers of consumers, as described herein, is
       part of a policy and practice that is designed and has the effect of unlawfully increasing
       Defendants' profits.

81.    Defendants' deceptive acts, by their nature, involve a material misrepresentation of the
       interest chargeable and accruing on its accounts.

82.    As a result of these violations of NYGBL § 349, Plaintiff has suffered actual and
       statutory damages.

83.    Plaintiff is also entitled to punitive damages of up to $1,000, injunctive relief, and
       attorney's fees and costs as a result of these violations.

### THIRD CAUSE OF ACTION

### NEW YORK GENERAL OBLIGATIONS LAW ("NYGOL") 4 5-501, et seg. DECLARATORY RELIEF AND DISGORGEMENT

84.    Plaintiff realleges and incorporates by reference all of the allegations contained in the above paragraphs.

85.    Defendants violated N.Y. GOL §5-501 et seq. by charging, collecting and/or attempting to collect interest of 27% per annum, which is far in excess of the permitted 16% under the New York civil law and which is, in fact, in excess of New York's criminal usury limit of 25% (N.Y. Penal Law § 190.40), as well.

86.    Pursuant to NYGOL § 5-511, Plaintiff and the class which he seeks to represent are entitled to have all debts on which Defendants charged, collected and/or attempted to collect usurious interest declared void.

87.    Pursuant to NYGOL § 5-513, Plaintiff and the class which he seeks to represent are entitled to disgorgement of all sums paid in excess of the maximum interest rate.

### REQUEST FOR RELIEF

**WHEREFORE,** Plaintiff Burach Feuerwerker, on behalf of himself and all others similarly situated, request judgment be entered against Midland Funding, LLC and Midland Credit Management, Inc. as follows:

(a) The Court find and issue an order certifying this matter to proceed as a class action pursuant to Federal Rule of Civil Procedure 23(b)(2) and/or (b)(3), and appointing Plaintiff Burach Feuerwerker as the class representative and the undersigned attorneys as class counsel;

-23-

(b) The Court enter a permanent injunction barring Defendants' practice of charging interest in excess of 16% in violation of NYGOL § 5-501, et seq.;

(c) The Court enter a judgment declaring that all accounts held by Defendants on which Defendants have charged, collected or attempted to collect interest in excess of 16% per annum are void;

(d) The Court enter judgment ordering disgorgement of all interest collected by Defendants in excess of the maximum allowed rate of 16%;

(e) The Court award Plaintiff actual damages, and the maximum amount of statutory damages as provided by 15 U.S.C. § 1692k;

(f) The Court award actual damages or $50 per class member, whichever is greater;

(g) Punitive damages up to $1,000.00 per class member, pursuant to NYGBL § 349(h);

(h) Attorney's fees, litigation expenses, and costs;

(i) Such other or further relief as the Court deems appropriate.

Dated: Brooklyn, New York
May 1, 2012

Hashim Rahman, Esq.
Maxim Maximov, Esq.
Maxim Maximov & Associates
**Attorney for the Plaintiff**
1600 Avenue M, 2nd Floor
Brooklyn, NY 11230
(718) 395-3459

Plaintiff requests trial by jury on all issues so triable.

Hashim Rahman, Esq.
Maxim Maximov, Esq

-24-

**mcm** Dept. 12421
PO Box 603
Oaks, PA 19456

||||||| |||||||||||||||||||||||||||||||||||||||||||||||||||||||

07-30-2009

#BWNHLTH          3944 - 4439
#0000 0853 0980 3709#
BURACH FEUERWERKER
1465 50TH ST
BROOKLYN, NY 11219-3633



| MCM Account Number | |
|---|---|
| | **8530980370** |
| **Original Creditor:** | |
| | **CITIBANK** |
| **CURRENT BALANCE** | |
| | **$38,788.72** |

Hours of Operation:
M-Th 6am - 7pm; Fri 6am - 5pm;
Sat 6am - Noon PST

## Choose The Option That Works For You.

Dear BURACH,

Midland Credit Management, Inc., understands a one-size payment plan doesn't fit everyone's needs. Special offers are now available to help you resolve your unpaid CITIBANK account. Select one of the three options below and get closer to having one less thing to worry about.

**Option 1: 40% OFF**
**Payment Due Date: 08-29-2009**
You Pay Only
**$23,273.23**

**Option 2: 20% OFF**
**First Payment Due Date: 08-29-2009**
12 Monthly Payments of Only
**$2,585.91**

**Option 3: Monthly Payments As Low As:**
Call today to discuss your options and get more details.
$50 per month†

If these options don't work for you, call one of our Account Managers to help you set up a payment plan that does.

Sincerely,

Cody Owens, Division Manager
(800) 282-2644

### Benefits of Paying!

- We will stop applying interest to your account!
- Your credit report will be updated with the payments made!*
- Once you make your agreed upon payments to settle your account, your credit report will be updated as 'Paid in Full'.

### CALL US TODAY!
**(800) 282-2644**

* Your credit report will not be updated if the federal reporting period has expired.

**Pay your bill online and view additional offers–
log on to www.mcmpayments.com today!**

PLEASE SEE REVERSE SIDE FOR IMPORTANT INFORMATION
*Please tear off and return lower portion with payment in the envelope provided*

## PAYMENT COUPON

MCM Account No.:    8530980370
Current Balance:    $38,788.72

**Payment Due Date: 08-29-2009**

Amount Enclosed: _____

Payment Options:
1) Mail in this coupon with your payment
2) Pay by phone (800) 282-2644

Make Check Payable to:
Midland Credit Management, Inc.

**mcm** Midland Credit Management, Inc.
P.O. Box 60578
Los Angeles, CA 90060-0578
|||.|||..|||....||..||...||..|||..|||.|||...||.|||..||...|

12 8530980370 9 2327323 082909 6

3944 - PMP4 - 4439

**IMPORTANT DISCLOSURE INFORMATION**

This is a communication from a debt collector. This is an attempt to collect a debt.
Any information obtained will be used for that purpose.

New York City Department of Consumer Affairs License Number 1140603, 1207829, 1207820, 1227728.

Return Mail Only - No Correspondence
Dept. 12421
**mcm** PO Box 603
Oaks, PA 19456

| | MCM Account Number |
|---|---|
| | **8530980370** |
| | **Original Creditor** |
| | **CITIBANK** |
| | **CURRENT BALANCE** |
| | **$66,363.30** |

02-23-2012

*BWNHLTH
*0000 0653 0960 3709*    3944 - 1375
BURACH FEUERWERKER
4312 17TH AVE 1
BROOKLYN, NY 11204-1016

Hours of Operation:
M-Th 6am - 7pm; Fri 6am - 5pm;
Sat 6am - Noon PST

## Choose The Option That Works For You.

Dear BURACH,

Midland Credit Management, Inc., understands a one-size payment plan doesn't fit everyone's needs. Special offers are now available to help you resolve your unpaid CITIBANK account. Select one of the three options below and get closer to having one less thing to worry about.

**Option 1: 70% OFF**                                You Pay Only
Payment Due Date: 03-24-2012                    **$19,908.99**

**Option 2: 50% OFF**                    12 Monthly Payments of Only
First Payment Due Date: 03-24-2012              **$2,765.13**

**Option 3: To hear more options, call one of our Account Managers.**

### Benefits of Paying!

- We will stop applying interest to your account!*

- Your credit report will be updated with the payments made!*

- Once you make your agreed-upon payments to settle your account, your credit report will be updated as 'Paid in Full'!*

**CALL US TODAY!**
**(800) 282-2644**

Sincerely,

Hector Torres, Division Manager
(800) 282-2644

\* Your credit report will not be updated if the federal reporting period has expired.

For ease and convenience, make payments online and view additional offers at: www.MidlandCreditManagement.com

PLEASE SEE REVERSE SIDE FOR IMPORTANT INFORMATION

*Please tear off and return lower portion with payment in the envelope provided*

---

## PAYMENT COUPON

MCM Account No.:      8530980370
Original Account No.: 5466160246296469
Current Balance:     $66,363.30

**Payment Due Date: 03-24-2012**

Amount Enclosed: _____

Payment Options:
1) Mail in this coupon with your payment
2) Pay by phone (800) 282-2644

Make Check Payable to:
Midland Credit Management, Inc.

**mcm** Midland Credit Management, Inc.
P.O. Box 60578
Los Angeles, CA 90060-0578

PMP-FEDIP-C-8

12 8530980370 9 1990899 032412 9

3944 - PMP6 - 1375

**IMPORTANT DISCLOSURE INFORMATION**

This is a communication from a debt collector. This is an attempt to collect a debt.
Any information obtained will be used for that purpose.

Calls to and/or from this company may be monitored or recorded.

New York City Department of Consumer Affairs License Number 1140603, 1207829, 1207820, 1227728.

MAIL PAYMENTS TO: P.O. Box 60578, Los Angeles, CA 90060-0578

MAIL CORRESPONDENCE BUT NO PAYMENTS TO: MCM's business address at
8875 Aero Drive, Suite 200, San Diego, CA 92123