**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------X

**BURACH FEUERWERKER**, on behalf of himself and all other similarly situated consumers

Case No.
**1:12-cv-02233-SLT-CLP**

                    Plaintiff,

         - against -

**MIDLAND FUNDING, LLC** and **MIDLAND CREDIT MANAGEMENT, INC.**,

**ANSWER TO PLAINTIFF'S CLASS ACTION COMPLAINT WITH AFFIRMATIVE DEFENSES BY DEFENDANTS, MIDLAND FUNDING, LLC AND MIDLAND CREDIT MANAGEMENT, INC.**

                   Defendants.
-------------------------------------------------X

NOW COME Defendants, Midland Funding, LLC ("MF") and Midland Credit Management, Inc. ("MCM") (collectively referred to herein as "Midland"), by and through their counsel, Marshall, Dennehey, Warner, Coleman & Goggin, P.C., and in answer to the Class Action Complaint by the Plaintiff, Burach Feuerwerker ("Plaintiff"), respectfully avers:

## ANSWER TO INTRODUCTION

1.     Admitted in part and denied in part.  Midland admits that Plaintiff has asserted claims against pursuant to the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, et seq., New York General Business Law § 349 and New York General Obligations Law § 5-501, et. seq., but denies any liability or wrongful conduct as alleged in this paragraph.  Midland denies the remaining allegations in this paragraph and leaves Plaintiff to his proofs.

2.     Admitted in part and denied in part.  Midland admits that Plaintiff, on behalf of himself and all others similarly situated, seeks injunctive relief,

declaratory judgment, actual, statutory and punitive damages against Defendants. Although this paragraph sets forth conclusions of law to which no response is required, Midland specifically denies that declaratory relief is available under the FDCPA, or by Plaintiff's attempt to circumvent the FDCPA through utilization of the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 (1976), so as to enable a private litigant to improperly pursue declaratory relief. Moreover, Midland denies that Plaintiff is entitled to a recovery of actual, statutory (or punitive damages) absent a showing of violative conduct on the part of Midland. Midland denies the remaining allegations in this paragraph and leaves Plaintiff to his proofs.

## ANSWER TO JURISDICTION

3.     Denied. The allegations in this paragraph constitute conclusions of law and are denied as such. Midland refers all questions of law to the Court.

## ANSWER TO VENUE

4.     Denied. The allegations in this paragraph constitute conclusions of law and are denied as such. Midland refers all questions of law to the Court.

## ANSWER TO PARTIES

5.     Admitted in part and denied in part. Midland admits that Plaintiff is an adult individual who resides in Brooklyn, New York. The remaining allegations in this paragraph constitute conclusions of law and are denied as such. Midland refers all questions of law to the Court.

6.     Admitted in part and denied in part. Midland admits that, on occasion, MF purchases defaulted debt obligations and further admits that it

maintains its principal place of business at the address set forth in this paragraph. The remaining allegations in this paragraph constitute conclusions of law and are denied as such. Midland refers all questions of law to the Court.

7.     Admitted in part and denied in part. Midland admits that MF is a subsidiary of Encore Capital Group, Inc. ("ECG") and further admits that ECG is an entity which is publicly traded on the NASDAQ market. Midland denies the remaining allegations in this paragraph and leaves Plaintiff to his proofs.

8.     Admitted in part and denied in part. Midland admits that, on occasion, MCM attempts to collect defaulted debt obligation owed by MF and further admits that it maintains its principal place of business at the address set forth in this paragraph. The remaining allegations in this paragraph constitute conclusions of law and are denied as such. Midland refers all questions of law to the Court.

9.     Admitted in part and denied in part. Midland admits that MCM is a subsidiary of ECG. Midland denies that MCM acts a servicer of all of the ECG's consumer debt portfolio as ECG does not own or possess a debt portfolio and MCM does not attempt to collect any debt obligations on behalf of ECG. Midland denies the remaining allegations in this paragraph and leaves Plaintiff to his proofs.

## ANSWER TO FACTUAL ALLEGATIONS

10.     Admitted in part and denied in part. Midland admits that Plaintiff incurred a debt obligation to Citibank (South Dakota), N.A. ("Citibank") in an amount exceeding $37,052.44 when it was purchased from MF on May 28,

2009.   Midland is without sufficient knowledge or information regarding whether or not the debt obligation at issue was incurred by Plaintiff for personal, family or household purposes and, therefore, Midland denied these allegations.   Midland denied the remaining allegations in this paragraph and leaves Plaintiff to his proofs.

11.   Admitted.   Midland admits that on May 28, 2009 MF acquired Plaintiff's valid and delinquent debt obligation from Citibank through a lawful assignment of all rights and conditions held by Citibank.

12.   Admitted.   Midland admits that, on or about June 5, 2009, MCM began attempting to collect the debt at issue from Plaintiff on behalf of MF.

13.   Admitted in part and denied in part.   Midland admits that, on or about July 29, 2009, MCM sent a collection letter to Plaintiff seeking to collect his valid and delinquent debt obligation owed to MF.   The letter referenced in this paragraph is a writing, the contents of which speak for themselves, and any characterization of the content of the letter referenced in this paragraph is specifically denied by Midland.   Midland denies the remaining allegations in this paragraph and leaves Plaintiff to his proofs.

14.   Denied.   The letter referenced in this paragraph is a writing, the contents of which speak for themselves, and any characterization of the content of the letter referenced in this paragraph is specifically denied by Midland.   Midland denies the remaining allegations in this paragraph and leaves Plaintiff to his proofs.

15.     Admitted.   Midland admits that the balance of Plaintiff's debt obligation that is at issue in this matter was $37,052.44 when it was assigned by Citibank to MF on May 28, 2009.

16.     Admitted in part and denied in part.   Midland admits that, on or about February 23, 2012, MCM sent a collection letter to Plaintiff.   The letter referenced in this paragraph is a writing, the contents of which speak for themselves, and any characterization of the content of the letter referenced in this paragraph is specifically denied by Midland.   Midland denies the remaining allegations in this paragraph and leaves Plaintiff to his proofs.

17.     Admitted in part and denied in part.   Midland admits that, on or about March 26, 2012, MCM sent a letter to Plaintiff confirming the debt and confirming the agreed-to default rate.   The letter referenced in this paragraph is a writing, the contents of which speak for themselves, and any characterization of the content of the letter referenced in this paragraph is specifically denied by Midland.   Midland denies the remaining allegations in this paragraph and leaves Plaintiff to his proofs.

18.     Admitted in part and denied in part.   Midland admits that, as of March 26, 2012, Plaintiff owed $67,393.   Unless otherwise admitted, Midland denies the allegations in this paragraph and leaves Plaintiff to his proofs.

19.     Denied.   The allegations in this paragraph constitute conclusions of law and are denied as such.   Midland refers all questions of law to the Court.

20.     Denied.   The allegations in this paragraph constitute conclusions of law and are denied as such.   Midland refers all questions of law to the Court.

21.     Denied.  The allegations in this paragraph constitute conclusions of law and are denied as such.  Midland refers all questions of law to the Court.

22.     Admitted in part and denied in part.  Midland admits that the default rate in the cardholder agreement is exempted from New York usury law.  The remaining allegations in this paragraph constitute conclusions of law and are denied as such.  Midland refers all questions of law to the Court.

23.     Admitted in part and denied in part.  Midland admits that the default rate in the cardholder agreement is exempted from New York usury law.  The remaining allegations in this paragraph constitute conclusions of law and are denied as such.  Midland refers all questions of law to the Court.

24.     Denied.  Midland denies that, on March 26, 2012, Plaintiff tried to dispute his debt obligation with MCM.  By way of further response, Midland states that, on or about March 26, 2012, MCM received a telephone call from Plaintiff in which Plaintiff proposed a settlement of his debt for $8,000, but MCM's records reflect that Plaintiff did not verbally dispute the debt and Midland leaves Plaintiff to his burden of proof.

25.     Denied.  Midland denies the allegations in this paragraph and leaves Plaintiff to his proofs.

26.     Denied.  Midland denies the allegations in this paragraph and leaves Plaintiff to his proofs.

27.     Denied.  The allegations in this paragraph constitute conclusions of law and are denied as such.  Midland refers all questions of law to the Court.

28.    Denied.  Midland denies that MCM denied Plaintiff his opportunity to dispute his debt.  By way of further response, MCM's records do not reflect a dispute from Plaintiff and Midland leaves Plaintiff to his burden of proof.

29.    Denied.   Midland denies Plaintiff's information and belief and demands a factual basis for this belief from Plaintiff.

30.    Denied.   Midland denies Plaintiff's information and belief and demands a factual basis for this belief from Plaintiff.

31.    Denied.   Midland denies Plaintiff's information and belief and demands a factual basis for this belief from Plaintiff.

32.    Denied.   Midland denies Plaintiff's information and belief and demands a factual basis for this belief from Plaintiff.

33.    Denied. Midland denies that such a conversation took place between Plaintiff and MCM and therefore denies these allegations and leaves Plaintiff to his proofs.

34.    Denied.   Midland denies that MCM engaged in any acts or omission giving rise to a claim under the FDCPA and denies the remaining allegations as they rely on a false premise.

35.    Denied.   Midland denies that MCM engaged in any acts or omission giving rise to a claim under the FDCPA and denies engaging in any "pattern and practice" as believed by Plaintiff in violation of the FDCPA. Midland denies the remaining allegations.  A factual basis for these allegations is demanded of Plaintiff.

36.    Denied.  Midland denies that MF or MCM are a proximate or direct cause of any harm to Plaintiff or that Midland violated the FDCPA.  Midland further denies that it was a proximate or direct cause of harm in the form of stress, mental anguish, emotional distress, embarrassment or suffering, as a result of MCM's lawful efforts to recover on Plaintiff's valid and delinquent debt obligation owed to MF.  Midland further denies that Plaintiff should be compensated in any amount in the absence of any violative conduct on the part of Midland.

37.    Denied.   Midland denies the allegations in this paragraph and leaves Plaintiff to his proofs.

38.    Denied.   Midland denies the allegations in this paragraph and leaves Plaintiff to his proofs.[1]

39.    Denied.  The allegations in this paragraph constitute conclusions of law and are denied as such.  Midland refers all questions of law to the Court.

## ANSWER TO DEFENDANT'S PRACTICES AND POLICIES

40.    Denied.  Midland denies that MCM improperly assesses interest on debts assigned to MF.  Midland further denies that MCM falsely stated an interest rate or that it incorrectly calculated the current balance in each of its collection letters sent to Plaintiff.  Midland further denies that MCM's July 30, 2009 letter or MCM's February 23, 2012 letter, copies of which are attached to the Complaint as Exhibit "A" reflect a false statement of the default rate or

---

[1] Midland assumes that Plaintiff misstated "Creditors Interchange" in this paragraph as a result of a "cut and paste" error.

show an incorrect calculation of interest. Midland denies the remaining allegations in this paragraph and leaves Plaintiff to his proofs.

41. Denied. Midland denies that MCM falsely represented the character, amount or legal status of Plaintiff's valid and delinquent debt obligation owed to MF. Therefore, Midland denies the illusory claims of an unlawful practice or policy with respect to the accrual of interest on defaulted debts lawfully assigned to MF and serviced by MCM or that either letter attached as Exhibit "A" to the Complaint reflects any false representations regarding the character, amount or legal status of Plaintiff's debt obligation. Midland denies the remaining allegations in this paragraph and leaves Plaintiff to his proofs.

42. Denied. Midland denies that MCM maintains a practice or policy to take action that cannot legally be taken or that is not intended to be taken and denies the remaining allegations in this paragraph and leaves Plaintiff to his proofs.

43. Denied. Midland denies that MCM has a practice or policy of accruing interest at a rate that is higher than permitted by law with respect to debt obligations owned by MF through a lawful assignment. A factual basis for these allegations is demanded of Plaintiff.

44. Denied. Midland denies that MCM has a practice or policy of failing to validate debts in accordance with the requirements set out in 15 U.S.C. §1692g of the FDCPA. A factual basis for these allegations is demanded of Plaintiff.

45.     Denied.  Midland denies that MCM has a practice or policy that it does not permit debtors to verbally dispute debts in accordance with the provisions of 15 U.S.C. §1692g(a)(3) – MCM does not assume that a debt is valid where it receives verbal dispute from the debtor within thirty days of the debtor's receipt of MCM's initial collection letter.[2]   In this case, the initial collection letter was mailed to Plaintiff on June 6, 2009 and was not returned as undeliverable.

46.     Denied.  Midland denies that MCM has a practice or policy that when MCM receives a timely written request for validation of a debt, MCM does not validate the debt.[3]  A factual basis for these allegations is demanded of Plaintiff.

47.     Denied. Midland denies these allegations and leaves Plaintiff to his proofs.

## ANSWER TO CLASS RULE ALLEGATIONS

48.     Admitted in part and denied in part.  Midland admits that Plaintiff attempts to assert a class action on behalf of a putative class of individuals

---

[2] Section 1692g(a)(3) of the FDCPA requires that the initial collection letter effectively conveys "... a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector."  MCM's June 6, 2009 letter to Plaintiff effectively conveyed this right.

[3] Section 1692g(a)(4) of the FDCPA requires that the initial collection letter effectively conveys "... a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector".  MCM's June 6, 2009 letter to Plaintiff effectively conveyed this right.

residing in the State of New York who were sent a letter by MCM (MF does not issue letters), where the default interest rate was in excess of 16% and where the debt was incurred for personal, family or household purposes. Midland denies that Plaintiff presents a viable class claim and denies violating the FDCPA.

49.   Denied.   Midland denies that the subclass identified by Plaintiff constitutes a viable class, denies that class certification is appropriate in this matter and denies that MCM violated the FDCPA as alleged in this paragraph. Midland denies the remaining allegations in this paragraph and leaves Plaintiff to his proofs.

50.   Denied.   Midland denies that the subclass identified by Plaintiff constitutes a viable class, denies that class certification is appropriate in this matter and denies that MCM violated the N.Y. GBL § 349 as alleged in this paragraph.   Midland denies the remaining allegations in this paragraph and leaves Plaintiff to his proofs.

51.   Denied.   Midland denies that the subclass identified by Plaintiff constitutes a viable class, denies that class certification is appropriate in this matter and denies that MCM violated the N.Y. GOL §5-501, et seq. as alleged in this paragraph.   Midland denies the remaining allegations in this paragraph and leaves Plaintiff to his proofs.

52.   Denied.  Midland denies that the alleged class is so numerous that joinder is impractical and further states that there is no numerosity and leaves

Plaintiff to his burden of proof as to each element of his "Umbrella Class" as to each member of Plaintiff's proposed class to demonstrate numerosity.

53.   Denied.   Midland denies the allegations in this paragraph and leaves Plaintiff to his proofs.

54.   Denied.   Midland denies the allegations in this paragraph and leaves Plaintiff to his proofs.

55.   Denied.   Midland denies the allegations in this paragraph and leaves Plaintiff to his proofs.

56.   Denied.  Midland denies that there exist questions of law and fact which are common to the putative class or which predominate over questions affecting the individual members of the putative class or the proposed subclasses. The remaining allegations in this paragraph constitute conclusions of law and are denied as such.  Midland refers all questions of law to the Court.

57.   Denied.  Midland denies typicality as to the putative class or the proposed subclasses and a factual basis to the contrary is demanded of Plaintiff.

58.   Denied.  Midland lacks sufficient knowledge, information or belief as to the truth or falsity of these allegations and, therefore, denies these allegations.

59.   Denied.  Midland denies that individual treatment of the claims alleged in this matter would be dispositive of the interests of any other party or would impede the protection of any other individual's interests.   Midland

denies the remaining allegations in this paragraph and leaves Plaintiff to his proofs.

60.   Denied.  Midland denies that there exist questions of law and fact which are common to the putative class or which predominate over questions affecting the individual members of the putative class or the proposed subclasses. Midland denies the remaining allegations in this paragraph and leaves Plaintiff to his proofs.

61.   Denied.   Midland   denies the allegations set forth in this Paragraph.   To the contrary, class treatment is not only grossly inferior to individual treatment, because establishing whether any putative member of the proposed class can participate requires an intensive and individualized inquiry into each individual's claims and terms of the underlying agreements, but also is not appropriate.   Additionally, class treatment would create gross inequities to those subjected to the class (to the extent that such a class could exist).   See e.g., *Hyderi v. Wash. Mut. Bank, FA*, 235 F.R.D. 390 (N.D. Ill. 2006). ("Precedent teaches that the availability of statutory damages plus the ability to recover attorney's fees and costs provides substantial incentives to bring meritorious individual suits."); see also, 5 Moore's Federal Practice §23.46[3][a] at 23-27 ("[I]f a claim is based on the law that permits the prevailing party to recover the cost of litigation...a class action is less likely to be the superior method of proceeding").   Midland further responds that it is clear that individual prosecution of the claims presented would be superior to class treatment.

62.   Denied.   Midland denies that class treatment is superior to individual treatment of the claims in this matter based on the facts presented in Plaintiff's Complaint.   In fact, Midland denies that class treatment is appropriate or the Plaintiff even presents viable claims against Midland. Midland further denies that any putative member of the proposed class in this matter incurred any damages as a result of the lawful collection activity on the part of MCM and Midland denies that management of this matter as a class action would present fewer difficulties than prosecuting individual claims. Midland denies the remaining allegations in this paragraph and leaves Plaintiff to his proofs.

63.   Denied.   Midland specifically denies that injunctive relief or declaratory relief is an available remedy under the FDCPA.   Midland denies the remaining allegations in this paragraph and leaves Plaintiff to his proofs.

64.   Admitted in part and denied in part.   Midland admits that Plaintiff seeks to certify a flawed hybrid class seeking equitable and monetary relief. Midland denies that class treatment of the claims in the current matter is appropriate or even possible and denies that equitable relief is available under the FDCPA.   Midland denies the remaining allegations in this paragraph and leaves Plaintiff to his proofs.

## ANSWER TO CAUSES OF ACTION

## ANSWER TO FIRST CAUSE OF ACTION

## FARI DEBT COLLECTION PRACTICES ACT ("FDCPA")
## 15 U.S.C. § 1692, et seq.

65.    No response is necessary as Plaintiff simply incorporates foregoing allegations in this paragraph.   To the extent that a response is required of Midland, Midland incorporates its responses to the foregoing allegations asserted in paragraphs 1 through 64 as though fully set forth herein.

66.    Denied.   The allegations in this paragraph constitute conclusions of law and are denied as such.   Midland refers all questions of law to the Court.

67.    Denied.   The allegations in this paragraph constitute conclusions of law and are denied as such.   Midland refers all questions of law to the Court.

68.    Denied.   The allegations in this paragraph constitute conclusions of law and are denied as such.   Midland refers all questions of law to the Court.

69.    Denied.   The allegations in this paragraph constitute conclusions of law and are denied as such.   Midland refers all questions of law to the Court.

70.    Denied.   Midland denies that MCM violated the FDCPA in the course of MCM's efforts to recover on Plaintiff's delinquent debt obligation. And denies that interest improperly accrued on Plaintiff's debt or any other debts owed to MF and Midland leaves Plaintiff to his burden of proof.   As to sub-paragraphs (a) through (d), Midland responds as follows:

(a)    Denied.   Midland denies that MCM falsely represented the character, amount or legal status of a debt and, therefore, denies that it violated § 1692e(2)(A) , and leaves Plaintiff to his proofs.

(b)     Denied.  Midland denies that it took or threatened to take action that could not legally be taken and denies that it charged usurious amounts in violation of § 1692e(5).  Midland denies the remaining allegations in this paragraph and leaves Plaintiff to his proofs.

(c)     Denied.  Midland denies that it used any false or deceptive methods in attempting to collect debts and, therefore, denies that it violated § 1692e(10), and leaves Plaintiff to his proofs.

(d)     Denied.  Midland denies that it attempted to collect interest that was not expressly authorized by an agreement between Plaintiff and Citibank or between any other individual and a particular creditor and, thus, denies violating § 1692f(1).  A factual basis as to Plaintiff's claims and as to the particular claims of each purported member of the classes that Plaintiff seeks to represent it demanded of Plaintiff.

71.     Denied.  Midland denies that it violated § 1692g(a)(3) in attempting to collect Plaintiff's valid and delinquent debt obligation.  Midland denies the remaining allegations in this paragraph and leaves Plaintiff to his proofs.

72.     Denied.  Midland denies that it violated the FDCPA in attempting to collect Plaintiff's valid and delinquent debt obligation owed to MF and denies that Plaintiff is entitled to statutory damages, actual damages, costs or attorney's fees absent a showing of violative conduct on the part of Midland. Midland denies the remaining allegations in this paragraph and leaves Plaintiff to his proofs.

73.   Denied.  Midland denies these allegations and leaves Plaintiff to his proofs.

## ANSWER TO SECOND CAUSE OF ACTION

## <u>NEW YORK GENERAL BUSINESS LAW § 349 ("NYGBL § 349")</u>

74.   No response is necessary as Plaintiff simply incorporates foregoing allegations in this paragraph.  To the extent that a response is required of Midland, Midland incorporates its responses to the foregoing allegations asserted in paragraphs 1 through 73 as though fully set forth herein.

75.   Denied.  Midland denies that MCM's attempts to collect a valid and delinquent debt obligation owed by Plaintiff to MF involved the improper accrual of interest in violation of New York law,  and, therefore, Midland denies violating NYGBL § 349 with regard to MCM's efforts to recover on Plaintiff's debt.  Midland denies the remaining allegations in this paragraph and leaves Plaintiff to his proofs.

76.   Denied.  Midland denies violating NYGBL § 349 in attempting to collect Plaintiff's valid and delinquent debt obligation and denies the remaining allegations in this paragraph, leaving Plaintiff to his proofs.

77.   Denied.   Midland denies the conclusory allegations in this paragraph and leaves Plaintiff to his proofs.

78.   Denied.   Midland denies the allegations in this paragraph and leaves Plaintiff to his proofs.

79.   Denied.   Midland denies the allegations in this paragraph and leaves Plaintiff to his proofs.

80.    Denied.  Midland denies that MCM has a policy and practice in place in which it overstates balances of debt obligation in letters sent to debtors, including the Plaintiff. Midland denies the remaining allegations in this paragraph and leaves Plaintiff to his proofs.

81.    Denied.  Midland denies that MCM made any misrepresentations, material or otherwise, regarding the debt obligation owed by Plaintiff or to others, including misrepresentation relating to the interest accruing on the debt obligation owed by Plaintiff to MF. Midland denies the remaining allegations in this paragraph and leaves Plaintiff to his proofs.

82.    Denied.  Midland denies that it violated NYGBL § 349 in the course of its efforts to recover on Plaintiff's valid and delinquent debt obligation and denies that Plaintiff has suffered any damages, actual or statutory, as a result of the lawful and appropriate efforts by MCM to recover on Plaintiff's debt. Midland denies the remaining allegations in this paragraph and leaves Plaintiff to his proofs.

83.    Denied.   Midland denies that Plaintiff is entitled to punitive damages, injunctive relief, attorney's fees or costs absent a showing of violative conduct on the part of Midland.

## ANSWER TO THIRD CAUSE OF ACTION

### NEW YORK GENERAL OBLIGATIONS LAW § 349 ("NYGOL") 5-501, et seq. – DECLARATORY RELIEF AND DISGORGEMENT

84.    No response is necessary as Plaintiff simply incorporates foregoing allegations in this paragraph.  To the extent that a response is required of

Midland, Midland incorporates its responses to the foregoing allegations asserted in paragraphs 1 through 83 as though fully set forth herein.

85.   Denied.  Midland denies that it violated N.Y. GOL § 5-501, et seq. in attempting to collect Plaintiff's valid and delinquent debt obligation owed to MF and further denies that it charged, collected or attempting to collect a rate of interest from Plaintiff in excess of the default interest rate set out in the card holder agreement between Plaintiff and Citibank and denies that MF is subject to the usury laws under N.Y. GOL § 5-501, et seq., as MF did not extend a loan to Plaintiff.  The remaining allegations in this paragraph constitute conclusions of law and are denied as such.  Midland refers all questions of law to the Court.

86.   Denied.   Midland denies that Plaintiff or any member of the putative class of individuals is entitled to have their respective debts declared void under Plaintiff's misapplication of NYGOL § 5-511, or otherwise.  The remaining allegations in this paragraph constitute conclusions of law and are denied as such.  Midland refers all questions of law to the Court.

87.   Denied.   Midland denies that Plaintiff or any member of the putative class of individuals are entitled to disgorgement of any sums paid toward their debts.  Midland expressly denies these allegations as to Plaintiff as he made no effort to pay even a portion of his valid and delinquent debt.  The remaining allegations in this paragraph constitute conclusions of law and are denied as such.  Midland refers all questions of law to the Court.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

Plaintiff has failed to plead a claim against Midland upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

In the event that Plaintiff is able to adequately plead individual claims under the FDCPA, his individual entitlement to statutory damages is capped at $1,000 per action, not per violation.  See *Dowling v. Kucker Kraus & Bruh, LLP*, 2005 U.S. Dist. LEXIS 1100 (S.D. NY. 2005); *Mann v. Acclaim Fin Servs*, 348 F. Supp. 2d 923 (S.D. Ohio 2004; *Donahue v. NFS, Inc.*, 781 F. Supp. 188 (W.D.N.Y. 1991); *Wiener v. Bloomfield*, 901 F. Supp. 771 (S.D.N.Y. 1995) and; *Teng v. Metropolitan Retail Recovery*, 851 F. Supp. 61 (E.D.N.Y. 1994).

### THIRD AFFIRMATIVE DEFENSE

Even if Midland violated the FDCPA, which is denied, Plaintiff did not incur actual damages as a result of the alleged conduct of Midland.

### FOURTH AFFIRMATIVE DEFENSE

Class treatment is grossly inferior to individual treatment in this case.

### FIFTH AFFIRMATIVE DEFENSE

Plaintiff is not an adequate class representatives for this matter.

### SIXTH AFFIRMATIVE DEFENSE

Common questions of law or fact do not overweigh the individual issues and preclude class treatment in this matter.

### SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are atypical of the prospective classes. The claims of Plaintiff are not typical of the classes.

### EIGHTH AFFIRMATIVE DEFENSE

Any violation of the Fair Debt Collection Practices Act by Midland, which Midland denies, was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

### NINTH AFFIRMATIVE DEFENSE

As MF did not extend any loan to Plaintiff, NYGOL §5-501, et seq., is plainly inapplicable to MF, and the default interest rate agreed to between Citibank and Plaintiff per Plaintiff's cardholder agreement was pre-empted at its inception. See *Manfra, Tordella & Brookes, Inc. v. Bunge*, 794 F.2d 61, 63, Fn 3 (2d Cir. N.Y. 1986)(NY Usury Laws do not apply to defaulted obligations); *Prowley v. Hemar Ins. Corp. of Am.*, 2010 U.S. Dist. LEXIS 45249 (S.D.N.Y. May 5, 2010)(relying on *Manfra*); *American Express Co. v. Brown*, 392 F. Supp. 235, 238 (S.D.N.Y. 1975)(same). Therefore, per paragraph 11 in the Complaint conceding that the debt was in default prior to his debt being acquired by MF, Count III of Plaintiff's complaint relies on a misapplication of law and should be dismissed or withdrawn. Additionally, to the extent that Count II of the

Complaint relies upon the flawed claims under NYGOL §5-501, et seq., Count II should be dismissed or withdrawn.

## TENTH AFFIRMATIVE DEFENSE

15 U.S.C. § 1692g(a)(3) plainly states that "within thirty days after receipt of the notice", a debtor may verbally dispute the validity of the debt or the debt will be assumed to be valid by the debt collector. MCM's June 6, 2009 letter to Plaintiff effectively conveyed this right. Plaintiff claims that he attempted to verbally dispute the debt around March 26, 2012 – or more than 2 years after the thirty-day window to verbally dispute the debt under the FDCPA. Even if Plaintiff did verbally dispute the debt more than 2 years after this deadline, no liability arises under the FDCPA even if Plaintiff did as he claims in his complaint. Therefore, Count I of the Complaint should be dismissed or withdrawn.

## ELEVENTH AFFIRMATIVE DEFENSE

Declaratory relief is unavailable to private litigants for claims premised on the FDCPA in the context of a class claim. See *Weiss v. Regal Collections,* 385 F.3d 337, 341-42 (3d Cir. 2004) . In fact, a class cannot be certified under the FDCPA premised on Fed.R. Civ. P. 23(b)(2). Additionally, plaintiff seeks declaratory relief premised on the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201-02 (1976), to circumvent the purposeful exclusion of declaratory relief under the FDPCA, and plaintiff's attempt to seek declaratory or injunctive relief should be dismissed or withdrawn. See *Weiss,* supra., and see *Sibley v. Fulton Dekalb Collection Service,* 677 F.3d 830, 834 (11th Cir. 1982)("The thrust of the

22

[FDCPA] is prevention of harassment and abuse as well as false, deceptive or misleading practices.... equitable relief is not available to an individual under the civil liability section of the Act").

Additionally, The U.S. District Court for the Central District of Illinois thoroughly analyzed this issue in *Zanni v. Lippold*, 119 F.R.D. 32, 33 (D. Ill. 1988) as follows: In *Duran v. Credit Bureau of Yuma,* 93 F.R.D. 607 (D. Ariz. 1982), the court held that it was without jurisdiction to grant injunctive relief to a consumer aggrieved by a debt collector's failure to comply with the requirements of the Fair Debt Collection Practices Act (FDCPA). That view is supported by the language of the FDCPA, . . . . by the Act's legislative history; by a comparison of the Act with other consumer protection statutes and cases which have specifically ruled that comparable civil liability or enforcement provisions should be narrowly construed. *Id.* at 608 (footnotes omitted). Similarly, in *Strong v. National Credit Management Co.,* 600 F. Supp. 46 (E.D. Ark. 1984), the court stated: "The FDCPA specifically authorizes the Federal Trade Commission (FTC) to seek injunctive relief (15 U.S.C. § 1691(l)) and defendant persuasively argues that this is a strong indication of Congress' intent to limit private actions to damage claims." Thus, the Court held no private action for injunctive relief lies under the statute. Finally, we consider the Act's legislative history. The Senate Report on the FDCPA, S. Rep. No. 382, 95th Cong., 2d Sess. 5, *reprinted in* 1977 U.S. Code Cong. & Ad. News 1695, 1699-1700, sets out detailed civil liability penalties. These penalties, however, are neatly divided according to who is bringing the action. Consumers are

allowed "actual damages . . . . as well as any additional damages the court deems appropriate, not exceeding $ 1,000." Significantly, the report does not say "as well as any additional *relief* the court deems appropriate." Clearly, Congress was allowing only for monetary damages where private parties were concerned. Conversely, in the following section of the report, entitled "Administrative enforcement," the report states: "The Federal Trade Commission is authorized to treat violations of the act as violations of a trade regulation rule, which empowers the Commission to obtain restraining orders and seek fines in federal district court." Thus, Congress did provide for injunctive relief under the Act, but reserved its availability to the FTC. Therefore, Plaintiff's efforts to seek declaratory relief by circumventing the FDCPA through application of the Federal Declaratory Judgment Act fails as a matter of law and should be stricken or withdrawn.

## TWELFTH AFFIRMATIVE DEFENSE

Punitive damages are available only as punishment and are intended not to compensate for loss but to punish wrongdoers for grossly negligent behavior and to warn others not to behave similarly. *Eria v. Texas Eastern Transmission Corp.*, 377 F.Supp 344, *346 (E.D.N.Y. June 19, 1974). Punitive damages are available only in those limited circumstances where it is necessary to deter defendant and others like it from engaging in conduct that may be characterized as 'gross' and 'morally reprehensible,' and of 'such wanton dishonesty as to imply a criminal indifference to civil obligations.'" *Aniero Concrete Co. v. New York City Const. Auth.,* 2000 U.S. Dist. LEXIS 8833, *90

(S.D.N.Y. June 27, 2000) citing *New York University v. Continental Ins. Co.*, 87 N.Y.2d 308, 315-16, 639 N.Y.S.2d 283, 662 N.E.2d 763 (N.Y. 1995); *Walker v. Sheldon* 10 N.Y.2d 401, 223 N.Y.S.2d 488, 179 N.E.2d 497 (N.Y. 1961).   As Plaintiff has failed to show that MCM's activities in this matter in attempting to collect the debt obligation owed by Plaintiff to MCM were "gross" or "morally reprehensible" so as to imply a criminal indifference to civil obligations, Plaintiff's claim for punitive damages should be stricken or withdrawn.

### THIRTEENTH AFFIRMATIVE DEFENSE

Because Plaintiff seeks to advance claims that appear to be time-barred, Midland affirmatively asserts the statute of limitations defense as to all claims asserted by the Plaintiff.

### FOURTEENTH AFFIRMATIVE DEFENSE

Plaintiff owes a debt in excess of $67,000 to MF.   To the extent that Plaintiff recovers any damages, MF affirmatively states its entitlement to a set off as to these damages equal to the amount owed by Plaintiff to MF.

### FIFTEENTH AFFIRMATIVE DEFENSE

A binding agreement to arbitrate all claims is present in the credit contract entered into between Plaintiff and Citibank for his Citibank AA World credit card, which is governed by the Federal Arbitration Act, 9 U.S.C. §§1 et seq., (the "FAA"). The FAA requires enforcement of the arbitration agreement. The arbitration provisions in Plaintiff's agreement with Citibank extend to the assignee of the agreement and the account, Midland Funding, LLC and its "agent", Midland Credit Management, Inc.

Section 2 of the FAA makes agreements to arbitrate "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 2 reflects the "'liberal federal policy favoring arbitration.'" *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1745, 179 L. Ed. 2d 742 (2011) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983)). This policy extends to agreements to arbitrate statutory claims. *Green Tree Financial Corp.-Ala. v. Randolph*, 531 U.S. 79, 89, 121 S. Ct. 513, 148 L. Ed. 2d 373 (2000). However, "[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral forum." *Preston v. Ferrer*, 552 U.S. 346, 359, 128 S. Ct. 978, 169 L. Ed. 2d 917 (2008) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628, 105 S. Ct. 3346, 87 L. Ed. 2d 444 (1985)). Thus, where the parties have agreed to arbitrate statutory claims, and where Congress has not manifested an intent that such claims should not be arbitrated, the agreement will be enforced, "so long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the forum." *Mitsubishi*, 473 U.S. at 637. The Supreme Court has held that "[t]he preeminent concern of Congress in passing the [FAA] was to enforce private agreements into which parties had entered, and that concern requires that we rigorously enforce agreements to arbitrate . . ." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 221 (1985). "[T]he Act leaves no place for the exercise of discretion . . . but instead mandates that . . . courts <u>shall</u> direct the parties to

proceed to arbitration on issues as to which an arbitration agreement has been signed." *Id.* at 218 (emphasis in original).   Therefore, as the agreement between Plaintiff and Citibank provides a binding arbitration provision with a class waiver, Plaintiff's claims must be properly submitted to binding arbitration on an individual basis.  See, e.g. *Bank Julius Baer & Co., Ltd. v. Waxfield Ltd.*, 424 F.3d 278, 281 (2d Cir. 2005); *Khanna v. Am. Express Co.*, 2011 U.S. Dist. LEXIS 146542 (S.D.N.Y. Dec. 14, 2011); *Gay v. CreditInform*, 511 F.3d 369, 395 (3d Cir. Pa. 2007).  Because the arbitration provision in the applicable credit contract is not unconscionable or unenforceable, and because the arbitration provision does not deprive Plaintiff of his ability to  recover for his alleged claims against Midland, Midland affirmatively reserves the right to file a motion to compel arbitration.

**WHEREFORE,** Defendants, Midland Funding, LLC and Midland Credit Management, Inc. respectfully request that this Answer be deemed good and sufficient, that Plaintiff's lawsuit be dismissed, with prejudice, at Plaintiff's cost, and that, pursuant to federal law, Plaintiff be ordered to pay costs, including reasonable attorney's fees, to Midland and for all other general relief.

MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN, P.C.

By: _____/s/_____
R. David Lane Jr. (RL 2806)
Attorneys for Defendants
Midland Funding, LLC and
Midland Credit Management, Inc.
Wall Street Plaza
88 Pine Street, 21st Floor
New York, New York 10005
(212) 376-6400

Dated: July 6, 2012          New York, New York

28